**John F. TUPPER, et al., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 97–1587.

United States Court of Appeals, First Circuit.

Heard Oct. 10, 1997.

Decided Jan. 12, 1998.

**445**

Lawrence H. Lissitzyn, with whom Reid and Riege, P.C., Hartford, CT, Susan E. Stenger, Boston, MA, and Perkins, Smith & Cohen, LLP were on brief for appellants.

Robert W. Metzler, Attorney, Tax Division, U.S. Department of Justice, with whom Loretta C. Argrett, Assistant Attorney General, Washington, DC, Donald K. Stern, United States Attorney, Boston, MA, and

* Of the District of Massachusetts, sitting by desig-

Kenneth L. Greene, Attorney, Tax Division, U.S. Department of Justice, Washington, DC, were on brief for appellee.

Before TORRUELLA, Chief Judge, BOUDIN, Circuit Judge, and WOODLOCK,* District Judge.

TORRUELLA, Chief Judge.

The trustees of both a multiemployer pension plan trust and an annuity plan trust appeal a judgment from the district court. The court held that during 1986, 1987, and 1988, when the plans had failed to meet the requirements of the Employee Retirement Income Security Act ("ERISA") and Internal Revenue Code ("I.R.C.") § 401(a), the trusts could not qualify as exempt from taxation as "labor organizations" under I.R.C. § 501(c)(5). We affirm.

### BACKGROUND

The Plumbing, Pipe Fitting and Heating Contractors Association of Brockton and Vicinity (the "Employers") and the Local Union 276 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (the "Union") entered into collective bargaining agreements in 1959 and 1983 providing for the creation of a defined benefit pension plan and a money purchase annuity plan respectively (the "plans"). According to the plans, half of the trustees of each plan trust are appointed by the Employers and half by the Union. The trustees are currently John F. Tupper, Robert S. Norvish, Raymond F. Brierly, Louis M. Colombo, Edward F. Cruz, and Dennis J. Cruz (the "trustees"). The trusts are funded entirely by employer contributions and exist solely to provide pension and annuity benefits for plan participants and beneficiaries.

In 1974, after the pension plan had been in existence for fifteen years, ERISA was passed. See Pub.L. No. 93–406, 88 Stat. 829. ERISA resulted from a Congressional finding that pension benefits promised to employees were not being adequately protected. See ERISA § 2(a). Congress created a sys-

nation.

tem of tax incentives and penalties in order to ensure protection of these funds. Pursuant to ERISA, a form containing certain information about a pension plan must be filed annually with the IRS in order to qualify the fund for tax exemption under I.R.C. § 401(a). *See* IRS Form 5500. The plans at issue in this case submitted these forms for 1986, 1987, and 1988.

An Internal Revenue Service ("IRS") audit for those three years revealed that the documents of the plans failed to meet the requirements of I.R.C. § 401(a) and found that the pension trust was not being operated in compliance with its plan. Consequently, the trustees paid over $450,000 in back taxes and then filed claims in federal court for refund, claiming entitlement to a tax exemption under various theories. All of those theories were eventually dismissed by the trustees' stipulation, save one somewhat novel claim which was the object of the district court's order and this appeal. The only question at issue in this case is whether the trusts, failing to meet ERISA standards, alternatively qualified for a tax exemption under I.R.C. § 501(c)(5) as "labor organizations."

The District Court of Massachusetts rejected a magistrate judge's recommendation that summary judgment be granted in favor of the trusts on this question, granting summary judgment in favor of the United States. This appeal followed.

### DISCUSSION

■ An award of summary judgment is reviewed *de novo*. *See United Nat'l Ins. Co.* *v. Penuche's, Inc.*, 128 F.3d 28, 30 (1st Cir. 1997). We view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor. *See Ahern v. O'Donnell*, 109 F.3d 809, 811 (1st Cir.1997). However, taxpayers must prove unambiguously that they are entitled to exemptions. *See United States v. Wells Fargo Bank*, 485 U.S. 351, 354, 108 S.Ct. 1179, 1181–82, 99 L.Ed.2d 368 (1988). Therefore, if "doubts are nicely balanced" regarding the applicability of a tax exemption, the exemption must be accorded its more limited interpretation. *Trotter v. Tennessee*, 290 U.S. 354, 356, 54 S.Ct. 138, 139, 78 L.Ed. 358 (1933). Thus, while factual doubts must be resolved in favor of the trustees in this case, legal ambiguities must be resolved in favor of the United States. We proceed with these standards in mind.

■ It is tautological that, when asked to interpret a statute, a court first looks to the text of that statute. *See Strickland v. Commissioner, Maine Dep't of Human Services*, 48 F.3d 12, 17 (1st Cir.1995). If our query is not answered by the text, we skeptically examine legislative history in search of an "unmistakable expression of congressional intent" before considering agency interpretations or other devices of construction. *See id.*

■ Thus, we begin our analysis with I.R.C. § 501(c)(5), which provides a tax exemption for "labor organizations." However, this term is not defined in the statute.[1] Fur-

---

1. Courts routinely look to other statutes when construing a particular statutory term, *see Friends of the Boundary Waters Wilderness v. Robertson*, 978 F.2d 1484, 1490 (8th Cir.1992). While the term "labor organization" is not defined anywhere in the I.R.C., the National Labor Relations Act ("NLRA") defines the term as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." *See* 29 U.S.C. § 152(5). The Supreme Court has held that this NLRA definition is susceptible to very broad interpretation. *See Marine Engineers Beneficial Ass'n v. Interlake S.S. Co.*, 370 U.S. 173, 181–82, 82 S.Ct. 1237, 1241–42, 8 L.Ed.2d 418 (1962); *NLRB v.*

*Cabot Carbon Co.*, 360 U.S. 203, 211–12 n. 7, 79 S.Ct. 1015, 1020–21 n. 7, 3 L.Ed.2d 1175 (1959). However, even a broad interpretation of this inclusive definition would not encompass the plans at issue. Nonetheless, we will continue with our analysis of the question presented by this case because we are hesitant to import definitions from statutes with unrelated or cross-purposes. *See General Dynamics Corp. v. Director, Office of Workers' Comp. Programs*, 585 F.2d 1168, 1170 (1st Cir.1978). The I.R.C. and the NLRA have very different objectives. It is unclear whether Congress intended to exempt from taxation each organization and only those labor organizations which it felt necessary to regulate via the Taft–Hartley Act and the NLRA. Furthermore, neither party addressed the applicability of the NLRA definition to I.R.C. § 501(c)(5).

thermore, the legislative history regarding this provision offers no insights into whether a pension trust established pursuant to collective bargaining and controlled jointly by the union and the employers was meant to be exempt from taxation. *See Stichting Pensioenfonds Voor de Gezondheid v. United States,* 129 F.3d 195, 198 (D.C.Cir.1997)(*"Stichting"*)(noting that the text and legislative history of I.R.C. § 501(c)(5) provide "little help" in understanding the scope of the term "labor organization").[2] In their briefs, both the United States and the trustees candidly acknowledge that we must look beyond the I.R.C. for guidance in this case.[3]

■ We next turn to the Treasury Department's Regulations that have been adopted in order to elaborate upon the definition of the term "labor organization" in 501(c)(5). These regulations provide as follows:

> The organizations contemplated by section 501(c)(5) as entitled to exemption from income taxation are those which:
>
> (1) Have no net earnings inuring to the benefit of any member, and
>
> (2) Have as their objects the betterment of the conditions of those engaged in such pursuits [i.e., labor], the improvement of the grade of their products, and the development of a higher degree of efficiency in their respective occupations.

26 C.F.R. § 1.501(c)(5)–1(a) (1997). If these regulations were applied consistently by the IRS, this case could be decided on the

definition provided therein. Clearly the pension funds do not improve the grade of the workers' products or develop a higher degree of efficiency in the plumbing and pipefitting professions. However, while we accord due deference to all reasonable agency interpretations of a statute, *see Strickland,* 48 F.3d at 17, the IRS's interpretation of the I.R.C. is reflected in Treasury Regulations *together with Revenue Rulings.* See 26 C.F.R. § 1.6661–3 (1997). An examination of the IRS Revenue Rulings interpreting § 501(c)(5) reveals that these regulations are routinely applied so liberally as to render them virtually useless in the present case.

In its Revenue Rulings, the IRS has held that "[a]n organization which is engaged in activities appropriate to a labor union, even though technically not a labor union itself, may qualify for exemption under § 501(c)(5)." Rev. Rul. 75–473, 1975–2 C.B. 213; *see also* Rev. Rul. 67–7, 1967–1 C.B. 137, 138 (same). Over the years, pursuant to § 501(c)(5), the IRS has exempted a union stewardship trust, a union dispatch hall, and a union newspaper. *See,* respectively, Rev. Rul. 77–5, 1977–1 C.B. 145; Rev. Rul. 75–473, 1975–2; Rev. Rul. 68–534, 1968–2 C.B. 217. Much like the trusts at issue, it is difficult indeed to see how these entities "improved the grade of workers' products" and "developed a higher degree of efficiency in their respective occupations" in accordance with the Treasury Regulations. The plan trusts, like the examples above, have no net earn-

**2.** In *Stichting,* the Court of Appeals for the District of Columbia Circuit recently addressed the same question posed here; i.e., whether a jointly-controlled employer-funded pension fund was exempt from taxation under § 501(c)(5) of the Internal Revenue Code. The court concluded that the plaintiff failed to unambiguously establish that such funds were "labor organizations" according to the Code. 129 F.3d at 200.

**3.** The United States argues that the congressional debates of 1909 do hint at a desire to exempt only representational entities under § 501(c)(5). However, the history does not reveal an "unmistakable expression of congressional intent" on this point. *See Strickland,* 48 F.3d at 17. There is no evidence that Congress envisioned modern pension plans like the one at issue in this case during these debates. Furthermore, the United States' argument is unpersuasive in light of the numerous Revenue Rulings in which the IRS has

consistently exempted various non-representational entities under this provision. *See* discussion *infra.* Furthermore, Congress has amended § 501(c) ten times since 1980 without ever clarifying the term "labor organization." *See* 26 U.S.C.A. § 501 (tracing these amendments). While "congressional inaction frequently betokens unawareness, preoccupation, or paralysis," *Zuber v. Allen,* 396 U.S. 168, 185 n. 21, 90 S.Ct. 314, 324 n. 21, 24 L.Ed.2d 345 (1969), when a specific subsection has received repeated congressional attention without any revision or clarification of a term which has been consistently interpreted by an administrative agency, there is a presumption that Congress is familiar with and supportive of the agency's interpretation. *See Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978); *Estey v. Commissioner, Me. Dept. of Human Services,* 21 F.3d 1198, 1214 (1st Cir.1994) (Cyr, J. dissenting).

ings inuring to the benefit of any member, and, in a sense, have as their objects the betterment of the conditions of the union members participating in the plans.[4] Against these background interpretations of the applicable Treasury Regulations, we must look elsewhere for guidance in deciding this case.

■ The trustees urge this court to consider General Counsel Memoranda ("GCMs") in order to establish that, pursuant to § 501(c)(5), the IRS has exempted entities similar to the plan trusts. GCMs are legal memoranda from the Office of Chief Counsel to the IRS prepared in response to a formal request for legal advice from the Assistant Commissioner (Technical). *See Taxation With Representation Fund v. Internal Revenue Service,* 646 F.2d 666, 669 (D.C.Cir. 1981). Completed GCMs are distributed to key officials within the IRS. *See id.* at 670. The Office of Chief Counsel retains GCMs, and indexes and digests them as an in-house research tool. *See id.* While the Internal Revenue Manual instructs IRS personnel not to use GCMs as precedents in the disposition of other cases, they may refer to GCMs for guidance in negotiations and in formulating a district office position on an issue. *See id.* (citing Internal Revenue Manual § 4245.3). Furthermore, GCMs are extensively cross-referenced and updated to reflect current agency policy. *See id.* at 682. As the D.C.

Circuit has recognized, GCMs constitute the "working law" of the agency, and are thus of use to courts and taxpayers as a research tool providing a substantially consistent interpretation of the I.R.C. *See id.* at 683.

However, under the Treasury Regulations, GCMs do not establish precedent, and taxpayers cannot cite GCMs as authority against the United States in litigation. *See* 26 C.F.R. § 1.6661–3(b)(2)(1997)(unlike Revenue Rulings, GCMs are not "authority"). This is precisely what the trustees seek to do. GCMs may be looked to as a research tool by any interested court or party, but they are not authority in this court. *See Stichting,* 129 F.3d at 200. When a reasonable regulation has been instituted pursuant to proper administrative procedures, federal courts must accord deference to the regulation. *See Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Cohen v. Brown University,* 101 F.3d 155, 195 (1st Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1469, 137 L.Ed.2d 682 (1997). We are thus precluded from considering GCMs in the manner urged by the trustees.[5]

Finding no definitive resolution of this issue in the text or history of § 501(c)(5), the Treasury Regulations, or precedential Revenue Rulings, we look at congressional treatment of jointly-controlled pension funds under other Internal Revenue Code provisions

---

**4.** In awarding summary judgment to the United States in *Stichting,* the D.C. District Court recognized a pattern in Revenue Rulings whereby non-representational entities which were not controlled by unions were not exempted under 501(c)(5). *See Stichting Pensioenfonds Voor de Gezondheid v. United States,* 950 F.Supp. 373, 377–378 (D.D.C.1996), *aff'd,* 129 F.3d 195 (D.C.Cir.1997). The D.C. Circuit did not address this "pattern" on appeal, and we are reluctant to draw any conclusions from the district court's analysis. The Internal Revenue Service has never held out control as a litmus test for the § 501(c)(5) "labor organization" exemption. Moreover, in two Revenue Rulings discussed above, the Service exempted a jointly-supervised dispatch hall and an employer-controlled trust funding a stewardship organization under the provision. *See,* respectively, Rev. Rul. 75–473, 1975–2 C.B. 213; Rev. Rul. 77–5, 1977–1 C.B. 146. While one might argue that each of these examples has a stronger union "nexus" than the trusts in this case, we are unpersuaded that cur-

rent regulations *require* a taxpayer seeking a § 501(c)(5) "labor organization" exemption to be either a representational or union-controlled entity.

**5.** In *Morganbesser v. United States,* 984 F.2d 560 (2d Cir.1993), the Second Circuit addressed the same issue presented by this case and *Stichting.* The panel, with one judge dissenting, held that a jointly-controlled pension fund *was* entitled to a tax exemption under § 501(c)(5) as a "labor organization." The majority decision, however, relied on GCMs. As explained above, we cannot follow this course. *See also Stichting,* 129 F.3d at 200 (declining to follow *Morganbesser's* reliance on "the precedentially dubious" GCMs). Furthermore, as the D.C. Circuit noted in *Stichting, id., Morganbesser* did not mention the Supreme Court's directive that "[e]xemptions from taxation are not to be implied ... they must be unambiguously proved." *United States v. Wells Fargo Bank,* 485 U.S. 351, 354, 108 S.Ct. 1179, 1181–82, 99 L.Ed.2d 368 (1988).

to see if the trustees' interpretation of the 501(c)(5) exemption is consistent with pronouncements about the taxation and regulation of such funds. Unfortunately for the taxpayers in this case, it is not.

In the Revenue Act of 1962, Pub.L. No. 87–834, § 25, 76 Stat. 960, Congress enacted a provision that allowed a particular pension plan to qualify retroactively under § 401(a). In so doing, the Senate Finance Committee stated that "[u]nder present law, a pension trust is qualified for income tax exemption only if it meets certain requirements relating to coverage of employees and nondiscrimination of contributions or benefits." S.Rep. No. 87–1881, at 300, *reprinted in* 1962–3 C.B. 707, 837. This statement implies that Congress intended § 401(a) as the only umbrella under which pension trusts might shield themselves from tax liability.

Congress again spoke on this issue when enacting ERISA. The House Ways and Means Committee explained that employer-provided plans are "required to comply with the new coverage, vesting, and funding standards in order to qualify for the favored tax treatment [i.e. tax exemption] under the Internal Revenue Code." H.R. Rep. No. 93–807 at 3, 31, *reprinted in* 1974–3 C.B. (Supp.) 238, 266. At the very least, these statements reveal that Congress was not anticipating a section 501(c)(5) "end run" around § 401(a)'s requirements for employer-provided pension funds. At most, these statements imply an affirmative intent to exclude these plans from the 501(c)(5) exemption.

Furthermore, IRC sections 413 and 414 specifically include multiemployer-funded pension plans established pursuant to collective bargaining agreements as entities covered under the ERISA regulation. It is hard to imagine that Congress would have painstakingly designed ERISA, choosing to use a conditional tax exemption as the primary incentive to ensure compliance, and at the same time would offer tax exemptions to all jointly controlled pension plans as "labor organizations" under § 501(c)(5). As the Su-

preme Court has stated, federal courts are "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA" and we see no need to do so here. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985).

Presented with no authority which clearly establishes an exemption under 501(c)(5) for the plan trusts at issue, and recognizing that such an interpretation would be at odds with, if not directly contrary to, the statements Congress has made regarding the proper taxation of such entities, we conclude that the trustees have failed to "unambiguously" establish their entitlement to a tax exemption. *See also Stichting,* 129 F.3d at 200 (reaching the same result).[6]

### CONCLUSION

For the reasons stated herein, the order of the district court is *affirmed.*

---

**6.** It is worth noting that the Treasury Department Regulations have been amended for taxable periods ending on or after December 21, 1995 to clarify the meaning of "labor organization" under § 501(c)(5). *See* 62 Fed.Reg. 40,447, 40,449 (1997) (adding 26 C.F.R. § 1.501(c)(5)–1(b)(1)).

Under the new regulations, pension funds like the one before the Court are explicitly excluded from the exemption. Thus, the primary dispute in *Stichting, Morganbesser,* and the present case is definitively resolved for taxable periods ending on or after December 21, 1995.