**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STARLA ROLLINS, on behalf of herself, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>DIGNITY HEALTH, a California non-profit corporation; HERBERT J. VALLIER, an individual,<br>*Defendants-Appellants.* | No. 15-15351<br><br>D.C. No.<br>3:13-cv-01450-TEH<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, Senior District Judge, Presiding

Argued and Submitted February 8, 2016
San Francisco, California

Filed July 26, 2016

Before: A. Wallace Tashima and William A. Fletcher, Circuit Judges and Robert W. Gettleman,[*] Senior District Judge.

Opinion by Judge W. Fletcher

## SUMMARY[**]

### Employee Retirement Income Security Act

Affirming the district court's partial summary judgment in favor of the plaintiff, the panel held that Dignity Health's pension plan was subject to the requirements of the Employee Retirement Income Security Act and did not qualify for ERISA's church-plan exemption.

Agreeing with other circuits, the panel held that a church plan must be established by a church or by a convention or association of churches and must be maintained either by a church or by a church-controlled or church-affiliated organization whose principal purpose or function is to provide benefits to church employees. The panel remanded the case to the district court for further proceedings.

---

[*] The Honorable Robert W. Gettleman, Senior District Judge for the U.S. District Court for the Northern District of Illinois, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Lisa S. Blatt (argued), Elisabeth S. Theodore, and William C. Perdue; Arnold & Porter LLP, Washington, D.C.; Barry S. Landsberg, Harvey L. Rochman, and Joanna S. McCallum; Manatt, Phelps & Phillips, LLP, Los Angeles, California; David L. Shapiro, Cambridge, Massachusetts; Charles M. Dyke, Nixon Peabody LLP, San Francisco, California; for Defendants-Appellants.

Ron Kilgard (argued) and Laurie Ashton, Keller Rohrback LLP, Phoenix, Arizona; Lynn L. Sarko, Havila C. Unrein, and Matthew M. Gerend; Keller Rohrback LLP, Seattle, Washington; Bruce Rinaldi, Karen L. Handorf, and Michelle C. Yau; Cohen Milstein Sellers & Toll, PLLC, Washington, D.C.; for Plaintiff-Appellee.

Shay Dvoretzky and Emily J. Kennedy, Jones Day, Washington, D.C., for Amici Curiae Alliance Defending Freedom and Thomas More Society.

David Cortman, Erik Stanley, and Jordan Lorence, Washington, D.C., as and for Amicus Curiae Alliance Defending Freedom.

Mark E. Chopko, Marissa Parker, and Brandon Riley, Stradley Ronon Stevens & Young LLP, Washington, D.C.; Lisa Gilden, The Catholic Health Association of the United States, Washington, D.C.; James F. Sweeney and John M. Cox; Sweeney, Greene & Roberts, LLP, Elk Grove, California; for Amici Curiae The Catholic Health Association of the United States, and The Alliance of Catholic Health Care.

G. Daniel Miller, Conner & Winters, LLP, Washington, D.C.; Laurence A. Hansen and Hugh S. Balsam, Locke Lord LLP, Chicago, Illinois; for Amici Curiae Guidestone Financial Resources of the Southern Baptist Convention, The Pension Boards—United Church of Christ, Inc., and The Church Alliance.

Michael Reiss and John A. Goldmark, David Wright Tremaine LLP, Seattle, Washington; Howard Shapiro, Robert Rachal, and Stacey Cerrone; Proskauer Rose LLP, New Orleans, Louisiana; for Amicus Curiae Providence Health & Services.

James A. Sonne, Stanford Law School Religious Liberty Clinic, Stanford, California, for Amicus Curiae Becket Fund for Religious Liberty.

Mary Ellen Signorille, AARP Foundation Litigation, Washington, D.C., for Amicus Curiae AARP.

Andrew L. Seidel, Madison, Wisconsin, as and for Amicus Curiae Freedom From Religion Foundation.

Daniel Mach, Washington, D.C., as an for Amicus Curiae American Civil Liberties Union Foundation.

Elizabeth O. Gill, San Francisco, California, as and for Amicus Curiae ACLU Foundation of Northern California, Inc.

Richard B. Katskee and Gregory M. Lipper, Washington, D.C., as and for Amicus Curiae Americans United for Separation of Church and State.

Ronald Dean, Law Office of Ronald Dean, Pacific Palisades, California; Karen W. Ferguson, Pension Rights Center, Washington, D.C.; Norman P. Stein, Philadelphia, Pennsylvania; for Amicus Curiae Pension Rights Center.

---

**OPINION**

W. FLETCHER, Circuit Judge:

Plaintiff-Appellee Starla Rollins filed this putative class action against her former employer, Defendant-Appellant Dignity Health, its Chief Human Resources Officer, unnamed members of its Retirement Subcommittee, and other unnamed fiduciaries (collectively "Dignity Health"), alleging that Dignity Health has not maintained its pension plan in compliance with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Dignity Health concedes it has not complied with ERISA, but contends its plan qualifies for ERISA's church-plan exemption. *See id.* §§ 1002(33), 1003(b)(2). The district court held that a pension plan must have been established by a church, or by a convention or association of churches, to qualify as a church plan. Because the district court found that Dignity Health's pension plan was not established by a church, or by a convention or association of churches, the court awarded partial summary judgment to Rollins, ruling that Dignity Health's pension plan must comply with ERISA. We accepted jurisdiction in this interlocutory appeal to address whether the district court was correct to hold that a church plan must be established by a church or by a convention or association of churches. We affirm the district court's answer to that question and remand for further proceedings.

I. Background

Because this appeal comes to us from the district court's award of summary judgment to Rollins, we relate the facts in the light most favorable to Dignity Health. *See Nolan v. Heald Coll.*, 551 F.3d 1148, 1150 (9th Cir. 2009). In the early 1980s, the Sisters of Mercy Congregations in Auburn, California and Burlingame, California (the "Sponsoring Congregations") each established nonprofit hospital systems. In 1986, the Sponsoring Congregations merged the two systems to form Catholic Healthcare West ("CHW"). Employees in the CHW system received pension benefits through seven plans, separately maintained either by a Sponsoring Congregation, by an individual hospital, or by CHW. On January 1, 1989, the Sponsoring Congregations, the hospitals, and CHW merged these plans into a single pension plan (the "Plan"). On July 20, 1992, CHW's board of directors adopted a retroactive resolution to treat the Plan as a church plan. CHW's name was later changed to "Dignity Health" as a result of corporate restructuring.

From 1986 to 2012, Plaintiff Starla Rollins worked as a billing coordinator for San Bernardino Community Hospital, which became affiliated with CHW and adopted the Plan in August 1998. On November 20, 1998, Rollins was sent a summary plan description, notifying her that CHW considers the Plan to be a church plan and therefore exempt from ERISA. Rollins became a participant in the Plan on January 1, 1999. She will be eligible for pension benefits from the Plan when she reaches retirement age.

Rollins filed this putative class action against Dignity Health, alleging that Dignity Health has violated numerous ERISA requirements. The complaint alleges, first, that the

Plan is not a church plan and, second, that ERISA's church-plan exemption is unconstitutional. Rollins seeks declaratory relief, money damages, statutory penalties, injunctive relief, and attorney's fees.

Dignity Health concedes that the Plan does not comply with ERISA, but contends that the Plan need not do so because it qualifies for the church-plan exemption under 29 U.S.C. § 1002(33)(C)(i) (for convenience, "subparagraph (C)(i)"). Dignity Health contends that under subparagraph (C)(i) a church plan need not have been established by a church or by a convention or association of churches (for convenience, "church") if it is maintained by a church-controlled or church-affiliated organization whose principal purpose or function is to provide benefits to church employees (for convenience, "principal-purpose organization").

The district court granted partial summary judgment against Dignity Health, holding that, to qualify for the church-plan exemption under subparagraph (C)(i), a plan must be established by a church *and* maintained either by a church or by a principal-purpose organization. *See Rollins v. Dignity Health*, 59 F. Supp. 3d 965 (N.D. Cal. 2014); *see Rollins v. Dignity Health*, 19 F. Supp. 3d 909 (N.D. Cal. 2013). The district court did not reach the question whether the church-plan exemption is constitutional.

The district court certified its order for interlocutory appeal because the question whether a plan must have been established by a church to qualify as a church plan under § 1002(33)(C)(i) is "a controlling question of law as to which there is substantial ground for difference of opinion and [because] an immediate appeal from the order may materially

advance the ultimate termination of the litigation."   *See* 28 U.S.C. § 1292(b).  We accepted jurisdiction.  The district court stayed proceedings pending appeal.

## II.  Standard of Review

We review *de novo* rulings on cross-motions for summary judgment. *Trunk v. City of San Diego*, 629 F.3d 1099, 1105 (9th Cir. 2011).  "Summary judgment is appropriate when, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (citation and internal quotation marks omitted); Fed. R. Civ. P. 56(a).

## III.  Discussion

Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citations and internal quotation marks omitted).  ERISA does not require employers to create benefit plans or require the provision of specific benefits once a plan is created. However, ERISA does seek "to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).  Church plans are exempt from ERISA's regulatory requirements unless the church waives the exemption.   29 U.S.C. §§ 1003(b)(2), 1321(b)(3); *see* 26 U.S.C. § 410(d).

For the reasons that follow, we agree with the district court that, in order to qualify for the church-plan exemption under subparagraph (C)(i), a plan must have been established by a church *and* maintained either by a church or by a principal-purpose organization.

## A. Statutory Text

In interpreting a statute, "[w]e look first at the plain language, examining not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy. If the statutory language is unambiguous, our inquiry is at an end. If the language is ambiguous, then we examine legislative history, and also look to similar provisions within the statute as a whole and the language of related or similar statutes to aid in interpretation." *Gladstone v. U.S. Bancorp*, 811 F.3d 1133, 1138 (9th Cir. 2016) (citations and internal quotation marks omitted). Two statutory provisions are directly relevant to this appeal.

First, church plans are exempt from otherwise applicable requirements of ERISA: "The provisions of this subchapter shall not apply to any employee benefit plan if . . . such plan is a church plan (as defined in section 1002(33) of this title)[.]" 29 U.S.C. § 1003(b)(2).

Second, a "church plan" is defined as follows:

> (33)(A) The term "church plan" means a plan established and maintained . . . by a church or by a convention or association of churches[.]
>
> . . .

(C) For purposes of this paragraph—

(i) A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches *includes* a plan maintained by an organization . . . the principal purpose or function of which is the administration of funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

29 U.S.C. § 1002(33) (emphasis added).

To make our discussion easier to follow, we describe the essential structure of the foregoing provisions: Paragraph 1003(b)(2) provides that a church plan is exempt from ERISA. Paragraph 1002(33)(A) provides that in order to qualify for the church-plan exemption, a plan must be both established and maintained by a church. Subparagraph (C)(i) provides that a plan established and maintained by a church "includes" a plan maintained by a principal-purpose organization.

There are two possible readings of subparagraph (C)(i). First, the subparagraph can be read to mean that a plan need only be maintained by a principal-purpose organization to qualify for the church-plan exemption. Under this reading, a plan maintained by a principal-purpose organization qualifies

for the church-plan exemption even if it was established by an organization other than a church. Second, the subparagraph can be read to mean merely that maintenance by a principal-purpose organization is the equivalent, for purposes of the exemption, of maintenance by a church. Under this reading, the exemption continues to require that the plan be established by a church.

We conclude that the more natural reading of subparagraph (C)(i) is that the phrase preceded by the word "includes" serves only to broaden the definition of organizations that may maintain a church plan. The phrase does not eliminate the requirement that a church plan must be established by a church. The other circuit courts that have considered the question agree with this reading. *See Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175, 180–81 (3d Cir. 2015); *Stapleton v. Advocate Health Care Network*, 817 F.3d 517, 523–27 (7th Cir. 2016). The Third Circuit provides the following helpful illustration: "[A]ny person who is disabled and a veteran is entitled to free insurance. . . . [A] person who is disabled and a veteran includes a person who served in the National Guard." *Kaplan*, 810 F.3d at 181. It is reasonably clear from context that a person who served in the National Guard satisfies the requirement that he or she be a veteran, but that this person qualifies for free insurance only if he or she is also disabled. Similarly, in subparagraph (C)(i), it is reasonably clear from context that a plan maintained by a principal-purpose organization satisfies the requirement that it be maintained by a church, but that the plan qualifies as a church plan only if it was also established by a church.

B.  Legislative History

Our reading is supported by legislative history.   As originally enacted in 1974, ERISA defined the term "church plan" as follows:

>   (A) The term "church plan" means
>
>>   (i) a plan established and maintained for its employees by a church or by a convention or association of churches which is exempt from tax under section 501 of the Internal Revenue Code of 1954, or
>>
>>   (ii) a plan described in subparagraph (C).
>
>   . . . .
>
>   (C) . . . [A] plan in existence on January 1, 1974, shall be treated as a "church plan" if it is established and maintained by a church or convention or association of churches for its employees and employees of one or more agencies of such church (or convention or association) . . . , and if such church (or convention or association) and each such agency is exempt from tax under section 501 of the Internal Revenue Code of 1954.  The first sentence of this subparagraph shall not apply to any plan maintained for employees of an agency with respect to which the plan was not maintained on January 1, 1974.  The first sentence to this subparagraph shall not apply

with respect to any plan for any plan year beginning after December 31, 1982.

29 U.S.C. § 1002(33)(A), (C) (1976). The parties' dispute would have been easily resolved under ERISA's originally enacted text, which unambiguously provided that a church plan must have been established by a church. But this text was amended in the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), to provide the current text of § 1002(33)(C)(i)–(iii).

Dignity Health contends that the current subparagraph (C)(i) eliminated the requirement that a plan be established by a church if a plan is maintained by a principal-purpose organization. As the "party contending that legislative action changed settled law," Dignity Health has the "burden of showing that the legislature intended such a change." *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521–22 (1989).

Dignity Health argues that subparagraph (C)(ii) supports its interpretation of subparagraph (C)(i). This subparagraph provides in relevant part:

> (ii) The term employee of a church or a convention or association of churches includes —
>
> > (I) a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, regardless of the source of his compensation;
> >
> > (II) an employee of an organization, whether a civil law corporation or

> otherwise, which is exempt from tax under section 501 of Title 26 and which is controlled by or associated with a church or a convention or association of churches; and
>
> (III) an individual described in clause (v).

Dignity Health contends that this subparagraph shows that Congress intended in subparagraph (C)(i) to eliminate the requirement that a plan be established by a church whenever a plan is administered by a principal-purpose organization. In particular, Dignity Health argues in its brief that, "If a church plan may cover employees of a church-associated organization, and a church-associated organization may maintain the plan, Congress had no reason to insist that the church itself must establish the plan." (Internal quotation marks omitted.) This argument is based on a misreading of the legislative history.

Congress' reason for enacting subparagraph (C)(ii) is clear from the legislative record. Before ERISA was enacted, many churches had allowed employees of church-associated organizations, such as hospitals and schools, to participate in the churches' pension plans. As originally enacted, ERISA allowed plans covering the employees of such organizations to qualify as church plans only until December 31, 1982. After that date, plans including employees of such organizations would either have had to comply with ERISA or divide into separate plans. Separation would have imposed significant hardships, including increased plan maintenance costs and limitations on the free movement of employees between a church and its associated organizations. *See* 125 Cong. Rec. 10,052 (May 7, 1979) (statement of Sen.

Talmadge). In response to this concern, Congress eliminated the sunset provision of former paragraph (C) and added subparagraph (C)(ii) to expand the definition of employees who were eligible to participate in a church plan. After the adoption of subparagraph (C)(ii), employees of church-associated organizations became eligible to participate.

Congress' reason for enacting subparagraph (C)(i) was different. Subsection 1002(C), as it existed until 1980, required that a church plan be maintained by a church. In codifying this requirement, Congress inadvertently excluded plans maintained (*i.e.*, administered) by church-controlled or church-affiliated pension boards rather than by churches themselves. *See, e.g.*, 125 Cong. Rec. 10,053 (May 7, 1979) (statement of Sen. Talmadge). Congress relaxed this requirement by adding the language in subparagraph (C)(i) that specifies that a plan maintained by a church-controlled or church-affiliated principal-purpose organization, such as a pension board, qualifies as a plan maintained by a church. The legislative history is clear that subparagraph (C)(i) addressed only the problem of maintenance by church-controlled or church-affiliated pension boards. *See, e.g.*, 125 Cong. Rec. 10,052 (May 7, 1979) (statement of Sen. Talmadge) ("Our legislation[] retains the definition of church plan as a plan established and maintained for its employees by a church or by a convention or association of church[es] exempt from tax under section 501."); *id.* at 10,053 ("No church plan administered or funded by a pension board would be disqualified merely because it is separately incorporated."); 126 Cong. Rec. 20,245 (July 29, 1980) ("[Mr. Talmadge:] May I ask whether the bill would enable a church pension board to maintain a church plan? [Mr. Long:] Yes."); Sen. Labor & Hum. Resources Com. Rep. on H.R. 3904 (Aug. 15, 1980) (noting that the former definition

of a church plan "would be continued" and only "clarified to include plans maintained by a pension board maintained by a church"); Sen. Com. on Fin., Exec. Sess., at 40 (June 12, 1980) ("The definition [of a church plan] would also be expanded to include church plans which rather than being maintained directly by a church are instead maintained by a pension board maintained by a church.").

Thus, subparagraph (C)(ii), on the one hand, and subparagraph (C)(i), on the other, addressed two quite different problems.  There is nothing in the legislative history of subparagraph (C)(ii) to suggest that Congress intended, in expanding the definition of eligible employees, to eliminate the requirement that a church plan be established by a church.  Nor is there anything in the legislative history of subparagraph (C)(i) to suggest that Congress intended, in broadening the definition of organizations that are authorized to maintain a church plan, to eliminate that same requirement.

## C.  Related Statutes

Dignity Health maintains that language in three federal statutes enacted after MPPAA supports its reading of subparagraph (C)(i).  As defined in these three statutes, the terms "church plan" and "[r]etirement income account[]" provided by [a] church[]" do not require that a plan or account be established by a church.  Dignity Health contends that we must presume that Congress intended the term "church plan" in ERISA to have the same meaning as in these statutes. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 254 (1994).  We disagree.

First, Dignity Health cites a statute, enacted in 2004, providing:

> For purposes of sections 401(a) and 403(b) of the Internal Revenue Code of 1986, any retirement plan maintained by the YMCA Retirement Fund as of January 1, 2003, shall be *treated as* a church plan (within the meaning of section 414(e) of such Code) which is maintained by an organization described in section 414(e)(3)(A) of such Code.

Pub. L. No. 108-476, 118 Stat. 3901 (2004) (emphasis added). Section 414(e)(3)(A) of the Internal Revenue Code is identical in all relevant respects to 29 U.S.C. § 1002(33)(C)(i). Thus, the statute above provides that a plan maintained by the YMCA Retirement Fund shall be "treated as" a church plan maintained by a principal-purpose organization, regardless of what entity established the plan. Pointing to this statute, Dignity Health suggests that a church plan need not be established by a church, as long as it is maintained by the appropriate type of organization. The statute above, however, does not indicate a congressional intent to interpret or redefine the meaning of the term "church plan" in other federal statutes. Instead, the statute specifies that plans maintained by the YMCA Retirement Fund will be "treated as" church plans, even though they are not, in fact, church plans.

Second, Dignity Health cites two investment statutes — the Tax Equity and Fiscal Responsibility Act of 1982 and the Church Plan Investment Clarification Act of 2012. These statutes define the term "[r]etirement income account[]" provided by [a] church[]" as a plan that is established *or* maintained by a church, and for purposes of those provisions only, a church-controlled or church-affiliated principal-

purpose organization qualifies as a "church." *See* 26 U.S.C. § 403(b)(9)(B); 15 U.S.C. § 77c(a)(2) (referring to accounts "described in section 403(b)(9) of Title 26"). Thus, to qualify as a "[r]etirement income account[] provided by [a] church[]" under these statutes, a plan need not have been established by a church. Dignity Health contends that it would be "anomalous" if the term "church plan" in ERISA had a different meaning from the term "[r]etirement income account[] provided by [a] church[]" in these statutes.

This argument is of little help to Dignity Health, as it proves too much. Construing the term "church plan" in ERISA to have the same meaning as "[r]etirement income account[] provided by [a] church" in these tax and securities laws would contradict Dignity Health's own construction of ERISA. Dignity Health concedes that, to qualify as a church plan under 29 U.S.C. § 1002(33)(A), a plan maintained by a church (rather than a principal-purpose organization) must also have been established by a church. Yet under the two statutes just described, an account qualifies as a "[r]etirement income account[] provided by [a] church" if it is maintained by a church, regardless of what entity established the account.

Further, we do not construe terms to have the same meaning when Congress expressly defines the terms differently. *See Loughrin v. United States*, — U.S. —, 134 S. Ct. 2384, 2390 (2014). ERISA defines the term "church plan" as a plan that is established *and* maintained by a church. The two statutes that Dignity Health cites define the term "[r]etirement income account[] provided by [a] church[]" as a plan that is established *or* maintained by a church or a church-controlled or church-affiliated principal-purpose organization. We presume Congress intended these disparate definitions to signify a difference in meaning. Indeed, these

differences mirror differences in definitions contained in 29 U.S.C. § 1002 itself. *Compare* § 1002(32) (defining the term "governmental plan" as a plan "established or maintained" by the government of any state, political subdivision of a state, or agency or instrumentality of a state or subdivision) *with* § 1002(33) (defining the term "church plan" as a plan "established and maintained" by a church (or a convention or association of churches)).

### D.  Agency Interpretations

Dignity Health contends we must defer to the view expressed by the Internal Revenue Service that a plan qualifies as a church plan if it is maintained by a principal-purpose organization.  We disagree.

An agency's interpretation of a federal statute is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."  *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001).  Otherwise, it is entitled to deference proportional only to its "power to persuade." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587–88 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Dignity Health maintains we should defer to a 1983 General Counsel Memorandum ("GCM") from the Internal Revenue Service ("IRS").  *See* I.R.S. Gen. Couns. Mem. 39,007, 1983 WL 197946 (July 1, 1983).  The GCM addressed "[w]hether a retirement plan covering the lay employees of a religious order whose main activity is the

operation of nursing homes or hospitals can be a 'church plan' within the meaning of [the Internal Revenue Code § 414(e)]." 1983 WL 197946 at *1. The agency first determined that the retirement plans in question had not been established by a church, as required by 26 U.S.C. § 414(e)(2)(A), because the religious orders were not "churches" within the meaning of the Internal Revenue Code. *Id.* at *5. However, the agency opined that the plans could qualify as church plans if they were "maintained either by the Catholic Church, which [qualifies] as a church, or by an organization described in section 414(e)(3)(A)" — that is, by a church-affiliated principal-purpose organization. *Id.*

GCMs "are legal memoranda from the Office of Chief Counsel to the IRS prepared in response to a formal request for legal advice from the Assistant Commissioner." *Tupper v. United States*, 134 F.3d 444, 448 (1st Cir. 1998). Like many GCMs, the GCM on which Dignity Health relies includes a disclaimer that it is "not to be relied upon or otherwise cited as precedent by taxpayers." 1983 WL 197946, at *6. We therefore give only *Skidmore* deference to the GCM.

The GCM's interpretation is unpersuasive. It is based on an obvious misreading of the statutory text, and it ignores the relevant legislative history. In the GCM, the agency opined that a plan may qualify as a church plan if it is maintained by the Catholic Church, regardless of what entity established the plan. That conclusion is based on a clear misreading of the text. As Dignity Health itself concedes, a plan maintained by a church must also be established by a church to qualify as a church plan. *See* 29 U.S.C. § 1002(33)(A). Further, the GCM does not analyze the legislative history indicating that, in adopting subparagraph (C)(i), Congress did not intend to

alter ERISA's requirement that a church plan must have been established by a church.  We therefore agree with the Third and Seventh Circuits that the GCM is not entitled to deference.  *See Kaplan*, 810 F.3d at 185; *Stapleton*, 817 F.3d at 530.

Several other administrative actions and regulations have relied upon and adopted the 1983 GCM's reading of the statute, without altering or expanding upon its analysis.  *See* I.R.S. Priv. Ltr. Rul. 200023057, 2000 WL 1998090 (Mar. 20, 2000); I.R.S. Priv. Ltr. Rul. 9717039, 1997 WL 200940 (Jan. 31, 1997); I.R.S. Priv. Ltr. Rul. 9525061, 1995 WL 372553 (Mar. 28, 1995); I.R.S. Priv. Ltr. Rul. 9409042, 1993 WL 596409 (Dec. 8, 1993); Op. Ltr. of Pension & Welf. Benefits Admin., 2000 WL 33146430 (2000); Dep't of Labor, Advisory Op. No. 96-19A, 1996 WL 556109 (Sept. 30, 1996); Pens. Benefit Guar. Corp., *Questions to the PBGC and Summary of Their Responses* 25 (Mar. 2011).  For the reasons above, these actions and regulations are also not entitled to deference.

Dignity Health also contends that Congress has acquiesced in the IRS's interpretation of the church-plan exemption.  But "[c]ongressional acquiescence can only be inferred when there is overwhelming evidence that Congress explicitly considered the precise issue presented to the court." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 493 (9th Cir. 2007) (citations and internal quotation marks omitted).  There is no evidence, let alone "overwhelming evidence," that Congress gave such consideration to this precise issue in a later-enacted statute.

### E. Constitutional Avoidance

Dignity Health contends our reading conflicts with the Religion Clauses of the First Amendment and asks us to construe the statute to avoid these conflicts. *See Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998). We conclude that there are no such conflicts.

Dignity Health argues that our reading conflicts with the Establishment Clause in three respects.

First, Dignity Health suggests that our reading of subparagraph (C)(i) discriminates against certain religious organizations by exempting plans established by churches, but not those established by other religious organizations. Dignity Health contends that § 1002(33) should be read to authorize all religious groups, however organized, to establish church plans. Subparagraph (C)(i) cannot plausibly be construed as Dignity Health suggests. Subparagraph (C)(i) does not refer generally to just any sort of religious organization; it refers specifically to church-controlled or church-affiliated principal-purpose organizations, such as pension boards. Thus, Dignity Health's argument can only be understood as an outright constitutional challenge to the church-plan exemption itself — a challenge Dignity Health surely does not intend to advance.

Such a challenge, moreover, would be baseless. For the proposition that the distinction between churches and other religious groups is constitutionally suspect, Dignity Health cites our decision in *Spencer v. World Vision, Inc.*, 633 F.3d 723 (9th Cir. 2011) (per curiam). *Spencer* held that a religious employer qualified for Title VII's "religious corporation" exemption, even though it was not a church. *Id.*

at 724. The panel majority in *Spencer* reached that conclusion based in part on a desire to avoid constitutional doubts about providing a statutory exemption to churches but not other religious groups. *Id.* at 728–29 (O'Scannlain, J., concurring, joined by Kleinfeld, J.). To express doubts about a constitutional issue is not to decide that issue. *Cf. Barapind v. Enomoto*, 400 F.3d 744, 750–51 (9th Cir. 2005) (en banc) (holding that an issue decided by a panel majority constitutes a holding of the circuit). Indeed, one of the primary justifications for the constitutional avoidance doctrine is to avoid unnecessary constitutional decisions. *See Rust v. Sullivan*, 500 U.S. 173, 190–91 (1991).

We do not share the doubts expressed in *Spencer*. Numerous federal statutes have long drawn the distinction between churches and other religious organizations. *See, e.g.*, 26 U.S.C. § 170(b)(1)(A)(ii) (allowing deductions for charitable contributions to churches); *id.* § 514(b)(3)(E) (providing special rules for debt-financed properties belonging to a church) ; *id.* § 6033(a)(3)(A)(i) (requiring tax-exempt organizations, other than churches, to file Form 990 tax returns); *id.* § 7611 (providing churches with enhanced protection from IRS audits). We agree with our sister circuits that these statutes are constitutional because they distinguish between churches and other religious organizations based on "neutral, objective organizational criteria." *Little Sisters of the Poor Home for the Aged v. Burwell*, 794 F.3d 1151, 1199–1201 (10th Cir. 2015), *vacated on other grounds*, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016); *see Priests for Life v. U.S. Dep't of Health & Human Servs.*, 772 F.3d 229, 272 (D.C. Cir. 2014), *vacated on other grounds*, *Zubik*, 136 S. Ct. 1557; *Geneva Coll. v. Sec'y U.S. Dep't of Health & Human Servs.*, 778 F.3d 422, 443 (3d Cir. 2015), *vacated on other grounds*, *Zubik*, 136 S. Ct. 1557; *Univ. of Notre Dame v. Sebelius*,

743 F.3d 547, 560 (7th Cir. 2014), *vacated on other grounds*, 135 S. Ct. 1528 (2015) (mem.).

Second, Dignity Health contends that our reading, by distinguishing between religious institutions based on organizational form, will inevitably lead to invidious discrimination based on denomination and religious belief. Dignity Health provides no support for this assertion other than citations to *Larson v. Valente*, 456 U.S. 228 (1982), *Colorado Christian University v. Weaver*, 534 F.3d 1245, 1258 (10th Cir. 2008), and *University of Great Falls v. NLRB*, 278 F.3d 1335, 1342 (D.C. Cir. 2002). None of these cases supports Dignity Health's argument. Each was directly "concerned with lines drawn based on denomination, rather than organizational form or purpose." *Priests for Life*, 772 F.3d at 273; *see Larson*, 456 U.S. at 246–48; *Colo. Christian Univ.*, 534 F.3d at 1258; *Univ. of Great Falls*, 278 F.3d at 1343.

Third, Dignity Health contends that our reading would entangle the government in religious matters by requiring it to determine whether religious organizations qualify as churches. But avoidance of this constitutional question would not lead to Dignity Health's construction of the church-plan exemption. To qualify as a church plan under subparagraph (C)(i), a plan must be maintained by a principal-purpose organization that is controlled by or associated with a *church*. And to qualify as an employee of a church under subparagraph (C)(ii)(II), an individual must be an employee of a tax-exempt organization that is controlled by or associated with a *church*. Even on Dignity Health's construction, agencies and courts must distinguish between churches and other religious organizations. *See Kaplan*, 817

F.3d at 531. Thus, Dignity Health's argument again becomes an outright challenge to the church-plan exemption itself.

That challenge fails. Dignity Health suggests that the determination whether an organization qualifies as a church requires a forbidden inquiry into matters of religious doctrine. *See, e.g.*, *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 502 (1979); *Mitchell v. Helms*, 530 U.S. 793, 826–28 (2000) (plurality opinion); *New York v. Cathedral Acad.*, 434 U.S. 125, 133 (1977); *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 336 (1987). But such a determination does not require this sort of inquiry, and it is not the inquiry that courts or agencies actually employ. *See Found. for Human Understanding v. United States*, 614 F.3d 1383 (Fed. Cir. 2010); *Am. Guidance Found., Inc. v. United States*, 490 F. Supp. 304 (D.D.C. 1980).

Finally, Dignity Health contends our reading interferes with internal matters of church governance in violation of both the Establishment and Free Exercise Clauses. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. —, 132 S. Ct. 694, 706–07 (2012). For the reasons already given, there is no Establishment Clause violation. There is also no Free Exercise violation, for even assuming that a church's choice of organizational form is an "internal church decision that affects the faith and mission of the church," the church-plan exemption does not interfere with this choice. *Id.* at 707. Religious groups are free to operate their agencies under the same organizational structure as their churches; they are also free to allow their agencies to operate separately. Under either organizational form, churches may allow their agencies' employees to participate in their pension plans.

## F.  Additional Issues

In addition to the question the district court certified for interlocutory appeal, Dignity Health urges us to review the district court's rulings that Rollins's lawsuit was timely, that the Plan was not established by a church, and that the Plan is not maintained by a principal-purpose organization. We have discretion to review any issue "fairly included" within the certified order, *Deutsche Bank Nat'l Trust Co. v. FDIC*, 744 F.3d 1124, 1134 (9th Cir. 2014) (internal quotation omitted), but we conclude that interlocutory consideration of these issues is unwarranted.

## Conclusion

For the foregoing reasons, we affirm the district court's partial summary judgment and remand for further proceedings.

**AFFIRMED and REMANDED.**